NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| QIANA E. DANIELS, : | |
| : | |
| Plaintiff, : | Civil Action No. 12-2646 (JAP) |
| : | **OPINION** |
| v. : | |
| : | |
| CAROLYN W. COLVIN, : | |
| Acting Commissioner of Social Security, : | |
| : | |
| Defendant. : | |

PISANO, District Judge

Plaintiff Qiana E. Daniels ("Plaintiff") appeals the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner" or "Defendant")'s, denial of her disability insurance benefits. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3) and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court affirms the Commissioner's final decision.

**I.   PROCEDURAL HISTORY**

On February 28, 2008, Plaintiff filed an application for disability insurance benefits with the Social Security Administration, which denied her initial request and her request for reconsideration. Then, Plaintiff requested a hearing before an Administrative Law Judge

1

("ALJ"), which took place on July 22, 2010. The ALJ denied Plaintiff's request for disability benefits.

Subsequently, on February 28, 2012, the Appeals Council denied Plaintiff's request to review the ALJ's decision. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. Plaintiff filed this civil action on May 2, 2012 before this Court, alleging that the ALJ's decision was not supported by substantial evidence.

## II.  BACKGROUND

Plaintiff was born on October 2, 1977. After completing the twelfth grade, Plaintiff worked in various jobs including as a cook/cashier, pressroom operator, tiller, waitress, and packer/shipper.

Plaintiff applied for disability benefits due to a number of medical conditions, including post-traumatic stress disorder ("PTSD"), migraine headaches, and asthma.

Regarding Plaintiff's PTSD, the first medical visit for this condition occurred on August 25, 2008, when Plaintiff presented to South Jersey Behavioral Health Resources with symptoms including inability to eat or sleep. R. 639-40. Further, she reported hearing the voice of her deceased fiancé. *Id*. On October 2, 2008, Plaintiff again reported to the same location and complained of panic attacks and anxiety. R. 649. The treating physician, Ann M. Martin, APRN, diagnosed Plaintiff with Bipolar II and PTSD. R. 649-55. After prescribing medication to control the condition, Plaintiff finally reported again to Ms. Martin on December 2, 2008 and January 29, 2009, at which time she stated that the medication was working. R. 645, 742.

Regarding Plaintiff's migraine headaches, Plaintiff was examined by Dr. Schutta, a neurologist, on November 28, 2007. R. 542. During that visit, Plaintiff complained of recurring headaches over the past two years with increased frequency and intensity. *Id*. Dr. Schutta placed

the Plaintiff on the medication Keppra. R. 541. Plaintiff next reported to Dr. Bosley, also a neurologist, on September 11, 2008. R. 602. Dr. Bosley prescribed Plaintiff Topamax and Maxalt for her headaches. R. 603.

Regarding Plaintiff's asthma, she visited Regional Medical Center on February 6, 2002 and complained of fever and cough and exacerbation of asthma. R. 535. Plaintiff next returned to Regional Medical Center in 2006. R. 440-45. On March 30, 2008 at Cooper Hospital, Plaintiff was treated for exacerbation of asthma and given medication. R. 774. On August 13, 2008, Plaintiff reported to Project Hope for asthma exacerbation. R. 571. On December 2, 2008, February 13, 2009, and February 23, 2009, Plaintiff again reported to Project Hope complaining of daily asthma attacks. R. 720, 715, 714. Finally, on March 16, 2009 and April 6, 2009, Plaintiff reported to Cooper Family Medical Center with asthma complaints. R. 748, 747.

### III.   ANALYSIS

#### A.   Standard of Review

This Court's review of a final determination by the Commissioner is twofold: (1) that the correct legal standards have been applied, and (2) that the findings of fact are supported by substantial evidence. *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983).

Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). Further, substantial evidence must be more than a "mere scintilla," *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938), but may be slightly less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

The reviewing court must review the evidence in its entirety. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). When there are conflicts of evidence, the Commissioner must provide

an adequate explanation of its "reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). Such an explanation is crucial to this court's review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)). If such a burden is met based on the evidence, the Commissioner's final determination will stand. 42 U.S.C. § 405(g).

### B.  The ALJ applied the correct legal standards

#### 1.  Establishing Disability

In order to be eligible for disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is disabled for these purposes only if her physical and mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The initial burden is on the claimant to establish entitlement to disability benefits by providing medical and other evidence to assist the Commissioner in making a determination. 42 U.S.C. 423(d)(5)(A).

Social security regulations set forth a five-step, sequential evaluation to determine whether an individual is disabled. 20 C.F.R. § 404.1520. During the first two steps of the

process, the claimant must show: (1) that she has not engaged in any "substantial gainful activity" since the onset of her alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). If that initial burden is satisfied, the third step requires the claimant to provide evidence that her impairment is equal to or exceeds one of those listed in Appendix 1 of the regulations ("Listing of Impairments"). 20 C.F.R. § 404.1520(d). A favorable determination at this step for claimant entitles her to disability benefits. If she cannot meet this burden, the analysis continues to steps four and five. The fourth and fifth steps focus on the claimant's residual functional capacity ("RFC"). The RFC consists of work and activities claimant is capable of engaging in accounting for any impairments. C.F.R. § 404.1520(e). At step four, the RFC is used to determine whether claimant is capable of returning to her previous line of work. If so, disability benefits must be denied. Finally, at step five the burden shifts to the Commissioner who must demonstrate that, considering the claimant's RFC, that the claimant is able to perform other substantial gainful work. 20 C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the claimant will receive disability benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n. 5 (1987).

### 2. The ALJ's decision

After considering the evidence in the record as well as conducting a video hearing with Plaintiff, the ALJ found at step one that the Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. R. 26. At the second step, the ALJ found Plaintiff's asthma, non-insulin dependent diabetes mellitus, and bipolar disorder to be severe. *Id*. Next, at step three, the ALJ found that the Plaintiff did not have an impairment that met one of the listings included in the regulations. R. 28. After determining Plaintiff's RFC at step four, the ALJ found that Plaintiff retained the ability to perform light work but was unable to perform the same

work as required by her previous job. R. 31-36. As a part of that analysis, the ALJ found the Plaintiff's subjective complaints to be less than credible. R. 34. Finally, at step five, the ALJ stated that Plaintiff was not disabled because jobs existed in which the Plaintiff could safely perform. R. 37. The ALJ ultimately denied Plaintiff's claim for disability benefits after engaging in the required five step analysis. This Court finds that the ALJ applied the proper legal standards in reaching its determination.

### C. The ALJ's findings of fact are supported by substantial evidence

#### 1. The ALJ did not err in determining that Plaintiff's asthma does not meet Listing 3.03.

Plaintiff contends that her asthma meets the relevant criteria of Medical Listing 3.03 and that the ALJ erred in finding to the contrary. Defendant, however, argues that the ALJ carefully considered the evidence and was correct in concluding that Plaintiff's condition did not meet Listing 3.03. Listings are used by the Commissioner during the third step of the disability review process. A list of impairments and the conditions an applicant must have to meet the listing are provided for in Appendix 1 to 20 C.F.R. Part 404, Subpart P (Listing of Impairments). Asthma is defined by 20 CFR Part 404, Subpart P, Appendix 1 as:

> A. chronic asthmatic bronchitis. . . .; or B. attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

Asthmatic attacks are further defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment. *Id*.

At issue here is whether there is substantial evidence to support the ALJ's finding that Plaintiff's asthmatic condition does not rise to the level of severity required by the regulation. As

an initial matter, substantial evidence establishes that Plaintiff did not meet the frequency required by the Listing. Although Plaintiff points to seven documented incidents between March 30, 2008 and March 30, 2009, with specific attacks on March 30, 2008, September 8, 2008, December 2, 2008, February 13, 2009, February 23, 2009, March 11, 2009, March 16, 2009 and April 6, 2009, the evidence only refers specifically to asthmatic attacks on the dates of September 8, 2008, December 2, 2008, February 13, 2009, and February 23, 2009. R. 576, 720, 714, 715. The corresponding medical records for the remaining dates do not refer to asthma attacks but rather asthma exacerbation or symptoms. Notably, the majority of Plaintiff's visits were not in-patient and thus did not rise to the level of "prolonged symptomatic episodes" as required by the regulation. Plaintiff has offered various other medical visits which refer to various respiratory issues from chest tightness to shortness of breath but not asthma. The ALJ carefully considered all of this evidence before making its determination. The ALJ noted that Plaintiff's case was lacking, among other things, pulmonary function testing data and a lack of relevant care since October 2009. R. 28. Furthermore, as the ALJ properly noted, Plaintiff's condition was controlled with medication and complicated by her continued tobacco use. R. 31-32. Thus, the ALJ's conclusion that Plaintiff did not meet the severity or frequency required by the listing and as a result, Plaintiff's asthma is not a disability is supported by substantial evidence in the record.

> 2. **The ALJ did not err in finding that Plaintiff's PTSD and Migraine Headaches were non-severe at step two or failing to consider them at the remaining steps in the evaluation process.**

Plaintiff next asserts that the ALJ's determination at step two of the evaluation that her PTSD and migraine headaches were not severe impairments and thus not disabilities is incorrect. Defendant, however, contends that Plaintiff was not found to be disabled because she did not

7

suffer from a severe impairment and such a favorable decision for Plaintiff renders particular impairment determinations harmless.

Regarding Plaintiff's PTSD, the ALJ stated that the condition was "well managed with appropriate care and treatment and fail[ed] to produce more than a minimal effect on the plaintiff's ability to perform basic work activities." R. 27. Such a finding is warranted by substantial evidence, which was carefully considered by the ALJ. It is clear that Plaintiff has a history of traumatic events including physical abuse, sexual abuse, and rape. R. 640. However, Plaintiff's symptoms, based on the evidence, do not rise to the level of severity required here. Plaintiff contends that her PTSD is illustrated by a myriad of symptoms including nightmares, paranoia, difficulty sleeping, anger, and anxiety. R. 640-54. However, as the ALJ properly concluded, these symptoms do not prohibit Plaintiff from performing basic functions in the context of the RFC. At various medical visits, Plaintiff was observed as retaining gross normal orientation, concentration, and cognitive function. R. 546, 601, 30, 267, 643, 804. As well, Plaintiff maintained an overall pleasant demeanor and cooperated fully with medical personnel. R. 29, 542, 603, 643, 654, 807. Furthermore, it is clear that although Plaintiff was diagnosed with PTSD by a clinician, the condition was well controlled with a medicine regimen. R. 33, 35, 740, 742. All of this taken together is consistent with the ALJ's finding that Plaintiff's PTSD is not severe for purposes of RFC calculations.

Regarding Plaintiff's migraine headaches, the ALJ stated that Plaintiff simply suffered from "recurrent headaches" which were treated with proper medication, and this finding is also supported by substantial evidence. As the ALJ discussed, medical records from Drs. Bosley and Schutta show that the headaches Plaintiff suffered from were properly treated with medication. R. 27. On appeal, all Plaintiff points to is her own testimony about suffering from headaches and

an unwarranted conclusion that they "cause significant functional limitations . . . ." P. Brf. 17. However, to the contrary, the medical evidence illustrates that, even given the benefit of the doubt, Plaintiff's headaches do not rise to the level of severity and are otherwise managed with proper medication.

Finally, Plaintiff also argues that because the ALJ found Plaintiff's two conditions to be non-severe at step two, the ALJ's subsequent RFC analysis was also flawed. However, this argument also fails. The Third Circuit addressed this issue directly, noting that if the ALJ ultimately decides in favor of the plaintiff at step two, determinations on individual impairments are harmless. *Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 143 n.2 (3d Cir. 2007) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)). Furthermore, this Court finds, as discussed *supra*, that the ALJ did not err on the PTSD or migraine headache determinations, and thus, this issue is irrelevant.

### 3.   The ALJ Did Not Err in Assessing Plaintiff's Credibility.

Lastly, Plaintiff argues that the ALJ's assessment of Plaintiff's subjective complaints contained mischaracterizations, which, if viewed correctly, may have altered the overall credibility determination. However, Defendant contends that the ALJ's determination was reasonable and properly considered Plaintiff's subjective complaints.

There is substantial evidence that the ALJ properly considered Plaintiff's subjective complaints and concluded that they were less than fully credible. In assessing a claimant's subjective complaints, the ALJ must give those complaints serious consideration even when not confirmed by objective medical evidence. *LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988) (quoting *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986)). However, the ALJ has the "discretion to evaluate the credibility of a claimant and to arrive at an independent judgment . . .

9

regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

The ALJ stated "[Plaintiff] has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. 34. Such a conclusion is warranted by the existing evidence in the record. There are several instances of conflicting evidence which would properly allow the ALJ to question Plaintiff's credibility. Plaintiff has stated that in the past she needed help caring for her pets. R. 208. However, in a more recent questionnaire with a date much closer to the disability period, Plaintiff stated that she receives no such help. R. 294. Additionally, Plaintiff's mother testified that she assists Plaintiff in dressing herself. R. 282. However, Plaintiff herself has claimed she does not require such assistance. R. 56, 274. The same is true for daily meal preparation. *Compare* AR 56 *with* 283. Furthermore, Plaintiff has, at least on occasion, used public transportation, went grocery shopping, and planned to go back to school. R. 55, 640.  Such discrepancies provide a rational basis for the ALJ to make his credibility determination. *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002).

The ALJ also properly recorded his own observations about Plaintiff and included them in his analysis. Pursuant to SSR 96-7p, the ALJ had the ability to "consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p (Cum. Ed. 1996), *available at* 61 Fed. Reg. 34,483-01 (July 2, 1996). Such discretion is not tempered to the extent Plaintiff claims. The case law Plaintiff relies on was based on specific sets of circumstances, namely contradicting medical testimony and observing the claimant for a short time via video conference. Here, the ALJ did not directly refute medical testimony, but rather relied on his own impressions and observations of Plaintiff

10

to provide this single piece in the overall analysis. Furthermore, the ALJ himself recognized the limits of observing Plaintiff via video conference by stating that the hearing was "short lived" and "cannot be considered a conclusive indicator…." R. 35. Thus, it is clear the ALJ did not over- rely on his observations and the amount he did is fully consistent with SSR 96-7p.

Finally, the ALJ provided clear reasons for questioning Plaintiff's credibility. As required in SSR 96-7p, the ALJ properly weighed the available evidence and provided an explanation for his credibility determination. The ALJ made proper citations to the record when necessary to support his determination. *See Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (requiring findings "specific enough to permit the Court to ascertain which evidence the ALJ accepted, which evidence he rejected, and why."). The discrepancies in the record are precisely what provided the basis for the ALJ to make its decision. As such, that determination was proper and subject to deference.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is affirmed.

Dated: July 15, 2013

/s/ Joel A. Pisano_____
JOEL A. PISANO
United States District Judge